UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RUDY REYNOSA,             )
                                        )
                  Plaintiff,         )      Case No. 5:05-cv-161
                                          )
v.                                       )      Honorable Robert Holmes Bell
                                        )
MICHIGAN DEPARTMENT OF     )
CORRECTIONS et al.,            )
                                        )
                  Defendants.      )
_____ )

**<u>OPINION</u>**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff will pay the initial partial filing fee when funds are available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint, in part, for failure to state a claim against Defendants Michigan Department of Corrections, City of Coldwater, Coldwater

Board of Public Utilities, Tom (Unknown), and Kurt Schultz . The Court finds that Plaintiff's claims against Defendants James Brennan and Karen Carter-Wagnor are not frivolous.

**Discussion**

I.     Factual Allegations

Plaintiff presently is incarcerated at the Florence Crane Correctional Facility but complains of events that occurred at Camp Branch and the Lakeland Correctional Facility.  In his *pro se* complaint, Plaintiff sues the Michigan Department of Corrections (MDOC), City of Coldwater, Coldwater Board of Public Utilities (CBPU), and Tom (Unknown), Director of the CBPU, under several state law theories, including negligence, gross negligence, engaging in an *ultra vires* act, and participating in a "proprietary function."  Plaintiff also sues MDOC employee Kurt Schultz of Camp Branch for violating his substantive due process rights under the Fourteenth Amendment, various articles under the Universal Declaration of Human Rights, and several state laws.  Finally, Plaintiff sues Doctor James Brennan and Nurse Karen Carter-Wagnor of the Lakeland Correctional Facility for violating his Eighth Amendment rights and various articles of the Universal Declaration of Human Rights.

On October 4, 2004, Schultz transported Plaintiff from Camp Branch to the CBPU for a work detail requested by Director Tom (Unknown), to demolish and remove a fence and tennis court.  As part of the work detail, Schultz requested Plaintiff to use a jack hammer to break up the concrete even though he had never been trained on a jack hammer.  Within ten minutes of using the jack hammer, it jerked and pulled Plaintiff in such a manner that he felt a sharp pain shoot from his back to his right leg.  When Plaintiff told Schultz of the incident, he recommended that Plaintiff continue working by throwing concrete rocks into a dump truck.  As soon as Plaintiff picked up the

- 2 -

concrete rocks, he felt an intense pain from his back to his right leg again.  After informing Schultz that he was seriously hurt, he was allowed to rest for the remainder of the day.  Prior to leaving the work site, however, Schultz allegedly requested Plaintiff to sign a paper falsely stating that he had been trained on a jack hammer.

The next day, prison staff transported Plaintiff to a hospital for numbness and severe pain in his right leg.  A doctor diagnosed him with "Lumbosacral Strain with Radiculopathy," a form of nerve damage, and prescribed Flexeril.  From October 6 to October 14, Plaintiff met with health services numerous times for numbness and severe pain in his right leg, but he claims that he did not receive appropriate pain medication.  Plaintiff alleges that the pain was so severe that he could not walk.

On October 14, Dr. Brennan examined Plaintiff and ordered bed rest and Ultram for his pain.  Plaintiff's condition, however, continued to worsen so that he was having difficulty sleeping and urinating as well as walking due to the pain.  Dr. Brennan also examined Plaintiff on October 19.  During the exam, Dr. Brennan asked Plaintiff to sit up straight.  When Plaintiff could not, Dr. Brennan allegedly grabbed Plaintiff's knees and forced them straight, causing Plaintiff severe pain.  Although he diagnosed Plaintiff with having "pain," Dr. Brennan refused Plaintiff's request for pain medication because "nothing has helped, so your out of luck."

After October 19, Plaintiff submitted multiple requests for medical treatment for his pain and for diagnostic tests.  Plaintiff now walked with a limp, and continued to have difficulty urinating and sleeping because of the pain.  On November 1, health services ordered pain medication and an x-ray for Plaintiff.  The radiologist diagnosed Plaintiff with a degenerated disk on November 17.  Plaintiff also received Magnetic Resonance Imaging (MRI) on November 22.  Health services

- 3 -

ultimately diagnosed Plaintiff with a "right true disc herniation at L4-5 reducing an acquired right spinal stenosis and right foraminal stenosis" on December 1, 2004.

Even after his diagnosis, Plaintiff alleges that he did not receive proper medical treatment. Plaintiff claims that Dr. Brennan still refused to order appropriate pain medication for Plaintiff even though he reviewed his x-rays and diagnosis. Plaintiff now needed the assistance of another prisoner to get out of bed and get dressed. On December 17, prison staff transported Plaintiff to the hospital for a consultation with a neurosurgeon. The neurosurgeon diagnosed Plaintiff with a bilateral foot drop and recommended surgery. Because his legs were very weak, Plaintiff received a wheelchair to help him move around and get dressed.

After returning from the hospital, Nurse Carter-Wagnor ordered Plaintiff out of the wheelchair. While Plaintiff was walking away, Nurse Carter-Wagnor allegedly stated "I hope you don't fall." A corrections officer later returned the wheelchair to Plaintiff so he could eat and get his medication. On December 18, a different nurse told Plaintiff that he did not have permission to use a wheelchair. When the nurse checked Plaintiff's medical file, the nurse allegedly stated that he should have been issued a wheelchair already and officially issued the wheelchair to him. From December 22 to December 27, 2004, Plaintiff remained in the hospital for surgery. As soon as Plaintiff returned to the prison, Nurse Carter-Wagnor and a corrections officer refused to give Plaintiff a wheelchair despite his weakened condition.

Upon being released from the hospital, Plaintiff began to experience chest pains. Prison staff escorted him back to the hospital, where he was diagnosed with a heart condition called "tachycardia." Plaintiff complains of several incidents where he was denied pain treatment and wheelchair access in January for his back injury and heart condition. Plaintiff further alleges that

- 4 -

Dr. Brennan placed false information in his medical file stating that Plaintiff's heart condition did not exist. Plaintiff claims that he will suffer from "back and lower body nerve pain and heart condition" for the rest of his life. For relief, Plaintiff requests monetary damages.

      II.    <u>Immunity</u>

      Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000); *Erdman v. Michigan Dep't of Corr.*, No. 94-2109, 1995 WL 150341, at *1 (6th Cir. April 5, 1995); *Cullens v. Bemis*, No. 92-1582, 1992 WL 337688, at *1 (6th Cir. Nov. 18, 1992); *Adams v. Michigan Dep't of Corr.*, No. 86-1803, 1987 WL 36006, at *1 (6th Cir. May 7, 1987). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the MDOC as a party to Plaintiff's complaint.

III.    Failure to state a claim[1]

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff fails to state a claim against Defendants MDOC, City of Coldwater, CBPU, Tom (Unknown), and Kurt Schultz.

A.    **City of Coldwater & CBPU**

The City of Coldwater and CBPU may only be liable under § 1983 when a policy or custom causes the injury. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne County*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred

---

[1]Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). Plaintiff alleges in his complaint that he exhausted his claims against Defendants MDOC, Schultz, Dr. Brennan and Nurse Carter-Wagnor to Step III of the grievance process. Plaintiff's assertions are adequate to satisfy the exhaustion requirement at this time.

because of the execution of that policy. *Turner v. City of Taylor*, No. 03-2636, slip op. at 7 (6th Cir. June 15, 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509.  It is the court's task to identify the officials or governmental bodies which speak with final policymaking authority for the local government in a particular area or on a particular issue. *McMillian v. Monroe County*, 117 S.Ct. 1734, 1736-37 (1997).

The Michigan constitution grants Michigan cities the power to adopt charters and ordinances. *See* MICH. CONST. ART. VII, § 22. The City of Coldwater adopted its charter in 1905. The Michigan Home Rule City Act, MICH. COMP. LAWS § 117.1 *et seq.*, further authorizes charter cities to exercise any power, enumerated or not, that advances the interests of the city. *Wilcox v. Gen. Ret. Sys. of the City of Detriot,* 233 F.3d 899, 901-2 (6th Cir. 2000)(citing MICH. COMP. LAWS § 117.4j(3)).  The City of Coldwater is an incorporated municipality with a council-manager form of government.  In matters pertaining to the City of Coldwater, a nine-member city council are the policymakers for the city. *See* COLDWATER CITY ORDINANCE, § 4.1 ("The Council shall exercise all of the legislative and policy-making powers of the city, except as otherwise provided by law").  Likewise, the CBPU Board of Directors, a five-member board, sets the policies for the City of Coldwater's electric, water, and sewer utility facilities and services.  *See* COLDWATER CITY ORDINANCE, §§ 15.3 & 1044.02.  Thus, the Court looks to the allegations in Plaintiff's complaint to determine whether Plaintiff has alleged that the city council and CBPU Board of Directors have an established policy or custom, which caused Plaintiff to be deprived of a constitutional right.

Plaintiff's allegations are:  (1) the City of Coldwater and CBPU are liable for the negligence of its employee, CBPU Director Tom (Unknown), for requesting prisoners to demolish the fence and tennis court, the demolition of which caused Plaintiff's injury; (2) the City of

- 7 -

Coldwater and CBPU are liable for exercising a "proprietary function."  Plaintiff defines a "proprietary function" as government action that produces a profit for itself, and not the public.  He claims that the City of Coldwater profited by hiring prisoners rather than expensive individuals who were qualified to demolish the fence and tennis court.  Plaintiff's actions fail because he has not identified a policy of the city council or the CBPU Board of Directors that deprived him of a constitutional right.  A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the city council.  *Monell*, 436 U.S. at 690.   Plaintiff's allegations also fail because he has not identified a custom of the city council or the CBPU Board of Directors, of failing to act, which resulted in the conduct that caused Plaintiff's injuries.  The Sixth Circuit has explained that a "custom"

> . . . for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law.  In turn, the notion of "law" includes deeply embedded traditional ways of carrying out state policy.  It must reflect a course of action deliberately chosen from among various alternatives.  In short, a "custom" is a "legal institution" not memorialized by written law.

*Doe*, 103 F.3d at 507 (citations and quotations omitted).  Plaintiff's claim that the City of Coldwater and CBPU were negligent does not show that city counsel or the CBPU Board of Directors took "a course of action deliberately chosen from among various alternatives."  *Doe*, 103 F.3d at 507.  Mere negligence in failing to take preventive measures is insufficient to show § 1983 liability.  *Molton v. City of Cleveland*, 839 F.2d 240, 246 (6th Cir. 1988).  Thus, Plaintiff has failed to allege that the city counsel or the CBPU Board of Directors, as final policymakers for the City of Coldwater and CBPU, respectively, had a policy or custom that caused Plaintiff to be deprived of a constitutional right.

Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate.  *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. 1993) (affirming dismissal of § 1983 action when plaintiff's allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation).  Therefore, the Court will dismiss Plaintiff's claims against Defendants City of Coldwater and CBPU because he failed to state a claim upon which relief may be granted.

## B.      Tom (Unknown), Director of the CBPU

Plaintiff asserts state law claims of negligence, gross negligence, and engaging in *ultra vires* activity against Director Tom (Unknown), in his official and individual capacity.  A suit against an individual in his official capacity is equivalent to a suit brought against a governmental entity; in this case, the City of Coldwater and CBPU.  *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989); *Matthew v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994); *see also Carter v. Cornwell,* 983 F.2d 52, 55 n.5 (6th Cir. 1993) (suit against city official in his official capacity is a suit against the city).  As stated above, Plaintiff has failed to allege that a policy or custom existed and thus his claim against Director Tom (Unknown), in his official capacity, is dismissed for failure to state a claim.

The state law claims against Director Tom (Unknown), in his individual capacity, are also dismissed because § 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  To the extent that Plaintiff's complaint presents allegations under state law, this Court declines to exercise jurisdiction.  The Sixth Circuit has stated that district courts should generally decline to

exercise supplemental jurisdiction over state law claims under these circumstances.  See *Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993);  *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *1-2 (6th Cir. June 18, 1998).  Therefore, Plaintiff's state law claims against Director Tom (Unknown) will be dismissed without prejudice.

### C.    Kurt Schultz

Plaintiff sues Kurt Schultz for negligence, gross negligence, engaging in *ultra vires* activities, violating various articles under the Universal Declaration of Human Rights, and violating his substantive due process rights under the Fourteenth Amendment.  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  As stated above, this Court declines to exercise jurisdiction over Plaintiff's state law claims.  *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993);  *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *1-2 (6th Cir. June 18, 1998).  Plaintiff's reliance on the United Nation's Universal Declaration of Human Rights as legal footing for his civil rights claim against Schultz is also misplaced.  The Supreme Court recently observed that "the Declaration does not of its own force impose obligations as a matter of international law," and by itself cannot support creation of a cause of action that a federal district court could hear under the applicable jurisdictional statutes.  *Sosa v. Alvarez-Machain,* 542 U.S. 692, 733 (2004).

The substantive due process clause also does not provide Plaintiff any basis for relief.  "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle.  He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court."  *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing

*Rochin v. California*, 342 U.S. 165 (1952)); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir.1993); *see also Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997). Plaintiff alleges that he has a protected liberty interest in Policy Directive 03.03.130 ¶ K(3), which provides that staff is prohibited from "any act or lack of care, whether by willful act or neglect, that injures or significantly impairs the health of any prisoner." *See* MICH. DEP'T OF CORR., Policy Directive 03.03.130 ¶ K(3) (effective 02/12/01). Schultz's alleged failure to comply with the policy directive does not itself rise to the level of a constitutional violation because a policy directive does not create a protectable liberty interest. *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687 at *1 (6th Cir. April 21, 1995). Plaintiff's substantive due process clause claim also fails to meet the formidable standard, i.e. "shock the conscience" of the court. Thus, Plaintiff fails to state a claim against Schultz.

IV.    Service

With respect to the remaining claims against Defendants Dr. Brennan and Nurse Carter-Wagnor, the Court concludes that the complaint is not frivolous and states at least one cognizable claim. Accordingly, the Court will direct service of the complaint on Dr. Brennan and Nurse Carter-Wagnor.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action against Defendants Michigan Department of Corrections, City of Coldwater, Coldwater Board of Public Utilities, Director Tom (Unknown) of the Coldwater Board of Public Utilities, and Kurt Schultz fail to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will order service of the complaint against Defendants James Brennan and

Karen Carter-Wagnor.

An Order consistent with this Opinion will be entered.


Date:   __December 22, 2005____         /s/ Robert Holmes Bell_____
                                        ROBERT HOLMES BELL
                                        CHIEF UNITED STATES DISTRICT  JUDGE