UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RUDY REYNOSA,

       Plaintiff,

v.                                    Case No. 5:05-cv-161
                                    HON. JANET T. NEFF

JAMES BRENNAN, et al.,

       Defendants.

_____/


## REPORT AND RECOMMENDATION

Plaintiff James Brennan filed this prisoner 42 U.S.C. § 1983 action asserting claims arising out of the care he received after injuring himself while working.    Plaintiff's amended complaint asserts claims against the remaining defendants, Dr. James Brennan, Karen Carter-Wagnor and officer Knebl.  Plaintiff complains of events that occurred at Camp Branch and the Lakeland Correctional Facility.  On October 4, 2004, plaintiff was transported from the Camp Branch to the Coldwater Board of Public Utilities as part of a work detail designated to demolish and remove a fence and tennis court.  Plaintiff was requested to use a jack hammer to break up concrete.  Plaintiff had no prior experience with a jack hammer.  Within minutes of using the jackhammer, it jerked and pulled plaintiff in a manner that caused pain to shoot from his back to his right leg.  Plaintiff was then told to continue working and assigned to throw concrete rocks into a dump truck.  Plaintiff was unable to perform this task and rested for the remainder of the day.

On October 5, 2004, plaintiff was taken to the hospital and diagnosed with a lumbosacral strain with radiculopathy.  Plaintiff was prescribed Motrin and Flexeril.  Plaintiff was

transferred to the Lakeland Correctional Facility on October 7, 2004.  Plaintiff was seen by a physician's assistant on October 8, 2004.  Medication was ordered, but plaintiff claims it provided no relief.  Plaintiff was examined by Dr. Brennan on October 14, 2004.  Dr. Brennan ordered bed rest and Altram for pain.  Plaintiff states that he was not receiving proper pain medication.  On October 19, Dr. Brennan examined plaintiff.  Plaintiff states that Dr. Brennan told him that nothing was wrong with plaintiff, nothing had helped him so far, and plaintiff needed exercise.  Plaintiff alleges that Dr. Brennan denied him appropriate medical care and caused him to suffer unnecessary pain for thirteen days.

By November 2004, plaintiff was diagnosed with a degenerated disc.  An MRI revealed that plaintiff suffered with a "right true disc herniation at L4-5, reducing an acquired right spinal stenosis and right foraminal stenosis."  On December 17, plaintiff was taken to the hospital where a neurosurgeon diagnosed him with a bilateral foot drop and recommended surgery.  Plaintiff received a wheel chair at the hospital.

After returning to the prison, nurse Carter-Wagnor ordered plaintiff out of the wheelchair.  While plaintiff was walking away, Nurse Carter-Wagnor allegedly stated "I hope you don't fall."  A corrections officer later returned the wheelchair to plaintiff so he could eat and get his medication.  On December 18, a different nurse told plaintiff that he did not have permission to use a wheelchair.  When the nurse checked plaintiff's medical file, she allegedly told plaintiff that a wheelchair should have been issued and she officially issued a wheelchair to plaintiff.

On December 22, plaintiff was admitted into Foote Hospital.  Plaintiff received his surgery.  Plaintiff asserts that when he arrived back to the prison from the hospital on December 27, nurse Carter-Wagnor was not sympathetic.  She ordered him out of health care and back to his own bed.  Plaintiff asserts that he was physically removed from health care and made to walk on his own

by nurse Carter.  Plaintiff asserts that he was subsequently ordered by officer Knebl to get out of a wheelchair.  Plaintiff believed that officer Knebl and nurse Carter were going to let him die.  Plaintiff began to cry and foam at the mouth.  He was taken to the hospital and re-admitted on December 27, 2004.  Plaintiff was diagnosed with the heart condition Sinus Tachycardia.

On January 3, 2005, plaintiff was seen by Dr. Brennan.  Plaintiff asked to be treated for his heart condition.  Dr. Brennan responded by stating that nothing was wrong with plaintiff's heart.  Dr. Brennan told plaintiff that he had a normal heart rate of 70 beats per minute.  Plaintiff states that he checked his heart rate and it was actually 124 beats per minute.  Plaintiff claims that Dr. Brennan lied about plaintiff's heart rate.

Plaintiff has filed a motion for summary judgment arguing that judgment should be entered in his favor against defendant Dr. Brennan pursuant to Fed. R. Civ. P. 56.  Defendants Carter-Wagnor and Knebl argue that they are entitled to summary judgment.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375,

382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position

will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether

there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

*See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence

of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas*

*& Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind

created factual issue).

       Plaintiff asserts that he is entitled to judgment on his Eighth Amendment claims

against defendant Dr. Brennan.  The Eighth Amendment prohibits the infliction of cruel and unusual

punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment

obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide

such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429

U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately

indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d

693, 702 (6th Cir. 2001).

       A claim for the deprivation of adequate medical care has an objective and a subjective

component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the

plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the

inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

*Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness

of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo*

*County*, 390 F.3d 890, 899 (6th Cir. 2004).  If, however the need involves "minor maladies or

non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898,  the inmate

must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farme*r, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. Apr. 4, 1997).

Plaintiff received some medical treatment from Dr. Brennan, including pain medications. Plaintiff clearly believes that he received improper treatment and the wrong types of pain medication. Nevertheless, plaintiff has not established a lack of a genuine issue of material fact that Dr. Brennan violated his constitutional rights. The record does not support such a finding. In the opinion of the undersigned, plaintiff has failed in his burden of establishing entitlement to summary judgment.

Defendant Carter-Wagnor argues that she is entitled to summary judgment on plaintiff's Eighth Amendment claims. Plaintiff asserts that defendant Carter-Wagnor refused to allow him to use a wheelchair, and the handicap line for meals. Plaintiff did not have a medical detail for a wheelchair on December 17, 2004, when defendant Carter-Wagnor allegedly refused to allow plaintiff to use a wheelchair. Nor has plaintiff presented anything to the court to establish that

- 6 -

defendant Carter-Wagnor violated a physician's order by refusing to allow plaintiff to use a wheelchair. Plaintiff has presented a medical detail for a wheelchair dated December 18, 2004 and expiring on December 27, 2004.

Plaintiff alleges that defendant Carter-Wagnor again denied him use of wheelchair on December 27, 2004, when he returned from the hospital after his surgery. Plaintiff also alleges that he was denied access to the handicap line to obtain his meals. When plaintiff came back to the prison on December 27, 2004, he was seen by defendant Carter-Wagnor. Defendant Carter-Wagnor reviewed the discharge instructions with plaintiff and indicated in a Michigan Department of Corrections SOAP Note Summary:

> Reviewed d/c instructions with prisoner including use of walker and purpose of walking, full weight bearing status. Pain meds ordered and reviewed with prisoner. Prisoner offered lay-in until seen by physician, but refused.

Contrary to plaintiff's conclusions, the medical records do not support his claim that he was required to use a wheelchair. After surgery, it was indicated that plaintiff was mobile. Plaintiff cannot show that defendant Carter-Wagnor violated his Eighth Amendment rights by requiring plaintiff to walk on his own. Plaintiff was given the opportunity to use a walker, but instead he wanted a wheelchair. It appears that defendant Carter-Wagnor wanted plaintiff to use his own strength to walk to help plaintiff facilitate his recovery. There is no indication that defendant Carter-Wagnor was trying to punish plaintiff. In fact, the medical records establish that defendant Carter-Wagnor was simply trying to help plaintiff. Plaintiff's Fourteenth Amendment claim against defendant Knebl, in the opinion of the undersigned, similarly lacks merit.

Plaintiff alleges that defendant Carter-Wagnor retaliated against him by instructing officer Daniels to write plaintiff a misconduct ticket for violating a medical detail. Retaliation based

upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See*
*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  In order to set forth a First
Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected
conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness
from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the
protected conduct. *Thaddeus-X*, 175 F.3d at 394.  Moreover, Plaintiff must be able to prove that the
exercise of the protected right was a substantial or motivating factor in the defendant's alleged
retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount
Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff cannot show that adverse action was taken against him that would deter a
person of ordinary firmness from engaging in future grievance filings.  Plaintiff was written a
misconduct ticket for being out of place.  In the opinion of the undersigned, receiving a misconduct
ticket for out of place cannot deter a person of ordinary firmness from filing future grievances.
Moreover, plaintiff cannot show a causal connection between his grievance filings and the
misconduct ticket.  Officer Daniels, who wrote the ticket, stated that plaintiff was given the ticket
for being out of place and that he routinely issues prisoners tickets when they are found out of place
Officer Daniels states that he wrote the ticket without any prompting from defendant Carter-Wagnor.

Plaintiff also alleges that his First Amendment rights were violated when defendant
Carter-Wagnor denied plaintiff law library time.  It is well established that prisoners have a
constitutional right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  The
principal issue in *Bounds* was whether the states must protect the right of access to the courts by
providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  The
Court further noted that in addition to law libraries or alternative sources of legal knowledge, the

states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25.  An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1, 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, *1-2 (6th Cir. Nov. 12, 1997).  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Plaintiff has failed to show an actual injury necessary to support an access to the courts claim.  The right of access to the courts has never been equated with the access of legal materials at the prison library.  *Lewis*, 518 U.S. at 351 (a sub-par library or legal assistance program does not establish relevant actual injury).

Defendants Carter-Wagnor and Knebl argue that they are entitled to qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known;  finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.  *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits.  *Dietrich*, 167 F.3d at 1012.  An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent.  *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff.  Part of the analysis is to determine whether there are any genuinely disputed questions of material fact.  *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).  Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge.  "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who

- 11 -

stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned, defendants are entitled to qualified immunity because plaintiff has failed to establish a constitutional violation.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in moving for summary judgment. Accordingly, it is recommended that plaintiff's motion for summary judgment (Docket #56) be denied, and defendant Carter-Wagnor's and Knebl's motion for summary judgment (Docket #73) be granted. It is further recommended that plaintiff's motion to compel defendant Brennan to respond to his motion for summary judgment (Docket #94) be denied as moot and plaintiff's motion for alternative dispute resolution (Docket #100) be denied. If the court accepts this recommendation, only Dr. Brennan would remain as a party. Dr. Brennan has filed a motion for summary judgment which is pending and not addressed in this recommendation.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


        /s/ Timothy P. Greeley                
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated:  February 12, 2008